# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILMA S. WESLEY, | ) |
|       Plaintiff, | ) ) ) |
| v. | )   Case No. CIV-16-160-SPS ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1] | ) ) ) ) ) |
|       Defendant. | ) |

## OPINION AND ORDER

The claimant Wilma S. Wesley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born December 2, 1967, and was forty-five years old at the time of the administrative hearing (Tr. 47). She has a high school education, and has worked as a cashier, short order cook, housekeeper, and poultry eviscerator (Tr. 55-56, 222). The claimant alleges that she has been unable to work since August 18, 2010, due to fibromyalgia, lupus, rheumatoid arthritis, diabetes, high blood pressure, and degenerative disc disease in her lower back (Tr. 221).

## Procedural History

On October 19, 2011, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 205-10). Her application was denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 27, 2014 (Tr. 16-31). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform a limited range of sedentary work as defined in 20 C.F.R. § 416.967(a), *i. e.*, she could lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk about two hours total during an eight-hour workday; sit for about six hours total during an eight-

hour workday; and occasionally climb, balance, stoop, kneel, crouch and crawl (Tr. 21). The ALJ also found the claimant must be allowed to alternately sit and stand every fifteen minutes throughout the workday in order to change positions, but without leaving the workstation (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, cutter-and-paster and final assembler (Tr. 30-31).

## Review

The claimant contends that the ALJ erred by failing to: (i) find her obesity qualified as medically equivalent to a Listing, (ii) properly consider her non-severe carpal tunnel syndrome, and (iii) properly assess her credibility. Because the Court finds the ALJ did fail to properly consider her obesity and assess her credibility, the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of obesity, osteoarthritis, bilateral degenerative joint disease with pain, lumbar disc disease, fibromyalgia, and psoriatic arthritis, but that her diabetes, hypertension, carpal tunnel syndrome status post surgeries, and sleep problems were non-severe (Tr. 18). The medical record reveals sporadic treatment for knee and/or leg pain prior to February 2011 (Tr. 300-12, 502-04). The imaging contained in the record includes June 2012 x-rays of the claimant's knees which revealed early degenerative medial and lateral compartment

joint space narrowing, and April 2013 x-rays of the claimant's right hip and cervical spine which were unremarkable (Tr. 375-76, 400-01).

Dr. Vittor regularly treated the claimant between February 2011 and June 2012 (Tr. 320-31, 365-82). Her assessments included diabetes, hypertension, morbid obesity, mixed connective tissue disorder, chronic low back pain with sciatica to right lower extremity, chronic right hip pain, asthma, diabetic neuropathy, and arthralgias/myalgias (Tr. 320-31, 365-82). In August 2011, the claimant reported right knee pain, and Dr. Vittor noted that she walked with a limp due to pain; her right knee was warm and tender, with synovitis; and her ankle was slightly swollen (Tr. 322). The claimant weighed 391.60 pounds and was 67 inches tall (Tr. 320). At a follow-up appointment on November 29, 2011, the claimant reported neck and low back pain, and Dr. Vittor noted cervical and lumbar percussion tenderness (Tr. 367). The same day, Dr. Vittor wrote a letter wherein she opined that the claimant's obesity limited her ability to walk, stand, or climb stairs, and that she was unable to work due to her multiple health problems (Tr. 368). On March 27, 2012, Dr. Vittor recommended that the claimant lose two hundred pounds to reduce neuropathy, back, knee, and hip pain, and discussed nutrition and low-impact exercise with her (Tr. 369). At a follow-up appointment on April 13, 2012, Dr. Vittor again discussed the importance of daily, low-impact exercise such as walking, and indicated that the claimant was at high risk for early death from obesity unless she lost weight (Tr. 374). The same day, Dr. Vittor completed a Health Examination Form for Choctaw Nation of Oklahoma Social Services, wherein she indicated that the claimant's morbid obesity, chronic neck pain, and chronic back pain

affected her work activities because it was difficult for her to walk and stand due to her size and pain (Tr. 483). Additionally, Dr. Vittor opined that she could tolerate sedentary work (Tr. 483).

Dr. Tummala, a rheumatologist, treated the claimant between December 2012 and April 2014 (Tr. 422-34). At her initial appointment, Dr. Tummala noted the claimant's exam was strongly suggestive of psoriatic arthritis, but that she did not have any obvious manifestations of rheumatoid arthritis (Tr. 426). He found, *inter alia,* tenderness, swelling, and reduced range of motion in her right knee; crepitus in her left knee; and tenderness and reduced range of motion in her lumbar spine (Tr. 426). X-rays of the claimant's hands were unremarkable (Tr. 426). Dr. Tummala prescribed an immunosuppressant and recommended bariatric surgery, noting the claimant's obesity could be a major contributing factor to her generalized pain (Tr. 426). At a follow-up appointment in January 2013, Dr. Tummala noted some objective improvement, but that the claimant had persistent tenderness (Tr. 429). The claimant reported no improvement in March 2013, and Dr. Tummala indicated that fibromyalgia appeared "more likely to be the problem." (Tr. 432). In April 2014, the claimant reported that her knee pain persisted despite medication and exercise, and was interfering with her ability to ambulate (Tr. 496-97). Dr. Tummala noted her left knee was tender and swollen with full range of motion, and he administered steroid injections (Tr. 496-97).

From December 2012 through October 2013, the claimant regularly presented to Dr. Stepanka Baggett for lab work, prescription refills, referrals, and/or assistance with forms (Tr. 461-72). Dr. Baggett's physical examinations at these visits were generally

normal, but she did note the claimant had a slow gait in October 2013 (Tr. 471). In October 2012, January 2013, July 2013, and October 2013, Dr. Baggett completed Health Examination Forms for Choctaw Nation of Oklahoma Social Services wherein she opined that the claimant was unable to work due to chronic diffuse arthralgias, psoriatic arthropathy, chronic pain, and joint stiffness (Tr. 484-87). Additionally, on December 23, 2013, Dr. Baggett wrote a letter to Choctaw Nation Health Clinic wherein she stated that the claimant had multiple medical problems, including psoriatic arthropathy with chronic pain, and due to such issues, had not been able to work since 2005 (Tr. 488).

Dr. Kilgore conducted a consultative physical examination of the claimant on December 29, 2011 (Tr. 332-35). Dr. Kilgore observed that the claimant was massively obese, appeared older than her stated age, and could get in and out of the chair, but could not lie down on the exam table (Tr. 333). Notably, Dr. Kilgore found that the claimant had some degree of reduced range of motion in every joint he tested, including her back, neck, wrists, thumbs, shoulders, elbows, hips, knees, and ankles (Tr. 336-39). He found tenderness in the claimant's back and neck, but no spasms (Tr. 334, 336). Her wrists, elbows, and shoulders were unremarkable except for decreased range of motion (Tr. 334, 337-38). As to the claimant's knees, Dr. Kilgore noted minimal crepitance in her left knee, and moderate swelling in her right knee with "significant" decreased range of motion (Tr. 334-35). He indicated the claimant's gait was slightly slow but stable with a moderate right leg limp (Tr. 333).

At the most recent administrative hearing, the claimant testified as to her past work history, her impairments, and her medical treatment (Tr. 37-64). She stated the

problems with her hands included throbbing and swelling in hot and cold temperatures, locking up when holding something, and lack of feeling in her fingers (Tr. 50). Additionally, she stated she could not do fine manipulation with her fingers (Tr. 54-55). She further stated that she must alternate between sitting and standing every fifteen minutes throughout the day, and would need to lie down for an hour or more during an eight-hour workday, depending on the weather due to pain in her thighs (Tr. 51-53). As to her knees, she indicated they "pop," and that the one she had surgery on was "real sensitive." (Tr. 53). The claimant stated that she weighed four hundred pounds (Tr. 54).

Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2002 WL 34686281 at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*

At step two, the ALJ that found that the claimant's obesity was a severe impairment (Tr. 18). At step three, he concluded that the claimant's impairments did not meet or equal a Listing, but provided no analysis whatsoever (Tr. 20-21). The ALJ did summarize the medical evidence related to the claimant's obesity at step three, and noted that a treating physician and others encouraged the claimant to exercise, which he found was an indication that the claimant was capable of at least that level of activity (Tr. 20-21). At step four, the ALJ's only reference to the claimant's obesity was ". . . due to her obesity, I find that a sit/stand option as defined above is reasonable." (Tr. 29).

The ALJ recited the foregoing authorities as to obesity at step three, but failed to connect them to the medical record in his findings at steps three and four, or determine whether the medical evidence demonstrated any additional or cumulative effects from her obesity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC.") [citation omitted]; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-1p on obesity applies at all steps of the evaluation sequence). This was particularly important here because Dr. Vittor repeatedly opined that the claimant's obesity contributed to her pain, complicated her other medical problems, and impaired her mobility, and Dr. Tummala suspected that the claimant's obesity was a major contributing factor to her pain (Tr. 365, 368-69, 371-72, 374, 426,

483).  Given the impact that obesity can have on the musculoskeletal, cardiovascular, and respiratory systems, the ALJ erred in failing to address the claimant's obesity at step four. *See* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *5.  *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions.  But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions.  Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ) [citation omitted].

 The claimant also contends that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p.  *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996).  But the Commissioner issued a ruling on March 16, 2016, which eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision."  *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v.*

*Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Accordingly, the Court finds that remand for proper analysis under the new guidance would likewise be advisable here.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**